IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2011

## ROBERT PAGE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-09509      Chris Craft, Judge**

_____

**No. W2010-02268-CCA-R3-PC  - Filed December 13, 2011**

_____

A Shelby County jury convicted the Petitioner, Robert Page, of second degree murder, and the trial court sentenced him to serve thirty-eight years in the Tennessee Department of Correction. The Petitioner appealed, and this Court reversed the conviction and remanded the case for a new trial, concluding that the trial court's failure to instruct the jury on facilitation was reversible error. *State v. Robert Page*, No. W2003-01342-CCA-R3-CD, 2004 WL 3352994, at *16 (Tenn. Crim. App., at Jackson, Aug. 26, 2004). Upon further review, our Supreme Court reversed the Court of Criminal Appeals judgment concluding that the failure to instruct on lesser-included offenses in the Petitioner's case did not constitute plain error. *State v. Page*, 184 S.W.3d 223, 226 (Tenn. 2006). The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition because he received the ineffective assistance of counsel. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Robert Page.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Amy P. Weirich, District Attorney General; Nicole Germain, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts
### A. Trial

This case arises from the Petitioner's participation in the beating death of Roosevelt Burgess. Based on this conduct, a Shelby County grand jury indicted the Petitioner for second degree murder. On direct appeal, our Supreme Court summarized the underlying facts of the case as follows:

> The proof at trial showed that at approximately 10:00 p.m. on April 30, 1999, Officer Jason McDaniel of the Memphis Police Department responded to a call directing him to the scene of an altercation at Third and Auction Streets. He found a man lying face down in a vacant parking lot. Other investigators found numerous bloody sticks and boards surrounding the victim, Roosevelt Burgess, who had suffered multiple head wounds and was dead on the scene.

> Ms. Carrie Jones testified that her daughter awakened her on the evening of April 30, 1999, because four men were outside "beating up" another man. Ms. Jones went outside and talked to one of the men—the [Petitioner]—to determine what had caused the fight. She asked the men to stop hitting the victim, but they would not. She stated that all four men were hitting the victim with planks, and that she saw the victim fall to the ground as a result of these blows. After the victim fell, all of the men kicked him except the [Petitioner]. All four men fled the scene before police arrived.

> Thomas Deering, M.D., a medical examiner for Davidson and Williamson counties, testified as an expert forensic pathologist. He performed an autopsy on the victim and determined that the cause of death was blunt trauma to the head caused by numerous blows resulting in injury to the brain.

> Officer Gary Creasy, Memphis Police Department, testified that on May 2, 1999, the [Petitioner] confessed to his involvement in the beating that resulted in the death of Burgess. In his confession, which Creasy read into the record, the [Petitioner] stated that he, together with Lacy Woods, Andy Carr, and Michael Woods participated in the beating. The [Petitioner] described his role in the altercation, stating:

> > I came from the store at Fifth and Mill Streets. When I stopped at the stop sign, I seen Lacey [sic] and some other dude arguing about

2

some money or something. I seen dude when he pulled a box cutter and tried to stab Lacey [sic] with it. Lacey [sic] was backing up, looking for something or anything to hit the dude with. Then, me, Michael and Andy got with Lacey [sic] and started chasing the dude with the box cutter. We ran to where the dude fell down. I don't know the name of the street. I picked up a sign and hit him with it in the back of the head. Then the sign slipped out of my hand and Andy Carr picked up the sign and hit him with it. Then, Michael Woods picked up the stick and hit the dude one time in the head. Then Michael throwed it down. That's when Lacey [sic] picked up the stick and kept on hitting the dude. I don't know how many times Lacey [sic] hit him, I think about seven or eight times. Then I walked off.

Lacy Woods pleaded guilty to second degree murder for his involvement in the beating and testified at the [Petitioner]'s trial. In Woods' prior statement to the police, he claimed that he had hit the victim about four times, using only his fist. He also said that the [Petitioner] had hit the victim about five or six times with his hands because the victim owed the [Petitioner] some drugs. At trial, he claimed that some of the information he had previously given was incorrect because he had been "messed up" the night he gave the statement. He admitted, however, that he was not drunk the next day when he signed that same statement. Woods testified that contrary to his prior statement, he was the one who hit the victim repeatedly with a two by four. He also testified that the [Petitioner] had tried to break up the fight, and that the [Petitioner] hit the victim only once with a plastic sign after the victim had taken a swing at the [Petitioner].

The jury was instructed on second degree murder and the lesser-included offenses of voluntary manslaughter and reckless homicide. The [Petitioner] did not request an instruction on facilitation of second degree murder, and none was given. The jury returned a verdict convicting the [Petitioner] of second degree murder.

*State v. Page*, 184 S.W.3d 223, 226-27 (Tenn. 2006). The jury convicted the Petitioner of second degree murder. The trial court sentenced him to serve thirty-eight years in the Tennessee Department of Correction.

The Defendant filed a direct appeal, and this Court reversed the Defendant's conviction and remanded the case for a new trial, concluding the trial court committed

3

reversible error when it omitted a jury instruction on facilitation of second degree murder. *Robert Page*, 2004 WL 3352994, at *16, *rev'd by Page*, 184 S.W.3d at 226. The State appealed this decision, and the Tennessee Supreme Court subsequently held that, by failing to request a jury instruction on a lesser-included offense, the Petitioner waived his right to seek appellate review, and the trial court's failure to instruct the jury as to facilitation of second degree murder did not constitute plain error. *Page*, 184 S.W.3d at 226.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The post-conviction court held an evidentiary hearing wherein it heard the following evidence:[1] Co-Counsel testified that, to his knowledge, neither he nor Counsel had filed any written motions requesting jury instructions on lesser-included offenses in the Petitioner's case. Co-Counsel said that "[a]ny discussion of the jury charges happened during the trial orally." Co-Counsel confirmed that the trial court charged the jury with instructions for second degree murder, voluntary manslaughter and reckless homicide. When asked why a motion was not filed asking the trial court to charge the jury on facilitation of second degree murder, Co-Counsel responded that Counsel, as lead counsel at trial, would better be able to respond to questions on trial strategy. He then went on to say, "You could see that the defense strategy did involve a self-defense, defense of others issue, and that was a primary focus based upon the facts that we had presented at trial, and that so insuring that those were in there, certainly, was the primary focus."

Co-Counsel testified that "certainly" an attorney wants every lesser included possible charged, however, "the focus was making sure that the instructions [ ] fit the facts that were presented at trial and the strategy of the defense." Co-Counsel said that the defense strategy in the Petitioner's case was self-defense and defense of others. He explained, "I would say that when you choose certain defense strategies, then you present a case in a certain light that [ ] doesn't necessarily go both ways. You can't necessarily say [ ] it is facilitation, but [ ], no. It is really he is acting in a defense of others, defense of himself." Upon further questioning, Co-Counsel said, "[O]ur defense strategy was focused on what [the Petitioner] had told us, what the facts told us, and it was more focused along the lines of defense of others, self-defense, that would have acquitted him at end result, not wound up as a lesser-included charge. And I certainly can state that I feel like the stance from the defense was

---

[1] In his petition for post-conviction relief, the Petitioner alleged several issues in which he asserted Counsel was ineffective. On appeal, however, he maintains only that Counsel failed to request an instruction on facilitation of second degree murder as a lesser-included offense of second-degree murder. As such, we omit claims asserted within the petition for post-conviction relief and testimony concerning allegations of ineffectiveness that the Petitioner does not maintain on appeal.

focused on what [the Petitioner] directed us that this was not something that he started and that was really the focus."

Counsel testified that he made a strategic decision that he did not want any lesser-included offenses instructed because the defense theory of the case was that the Petitioner did not murder the victim. Counsel said, "Strategy changes with each little nuance that happens. My strategy changed to the point where we had to argue just second degree murder, and that is what we did." Counsel explained that a co-defendant in this case testified at trial that he murdered the victim and not the Petitioner so a request for a lesser-included charge would have been inconsistent with the theory Counsel presented to the jury.

Based upon this testimony, the post-conviction court denied post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends the post-conviction court erred when it dismissed his petition because Counsel and Co-Counsel failed to properly request that the trial court instruct the jury on the lesser-included offense of facilitation of second-degree murder. The State responds that because the Petitioner failed to show deficient performance, the trial court properly denied the Petitioner post-conviction relief.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee

Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a

particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In its order denying the Petitioner relief on this issue, the post-conviction court made the following findings:

> As the defense strategy was to have the [P]etitioner exonerated entirely by the testimony of a co-defendant and the presence of the box cutter tagged and preserved by the police, attributed to the victim, this court cannot say this was an unreasonable strategy. As a Range II Multiple Offender, the [P]etitioner would be looking at a sentence of between 12 and 20 years if he were convicted of facilitation, and it was [ ] a reasonable decision, given the co-defendant's testimony, to attempt an acquittal instead.
>
> . . . .
>
> This court finds that this tactical decision was not below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and has determined that the [P]etitioner deserves no relief.

The evidence in this case does not preponderate against the trial court's findings on this matter. Both Counsel and Co-Counsel testified at the post-conviction hearing that the defense stance at trial was that the Petitioner did not kill the victim. One of the co-defendants in the case testified on the Petitioner's behalf in this respect. Further, evidence of the victim's box-cutter was introduced as a basis for a self-defense or a defense of others defense. Counsel testified that it was a strategic decision not to request the lesser-included offense of facilitation of second degree murder because it undercut their theory that the Petitioner did not commit the murder and acted in self-defense or in defense of Lacy.

7

The Petitioner relies upon *Montea Wilson (a.k.a. Marcus Floyd) v. State*, No. W2008-02439-CCA-R3-PC, 2010 WL 3822934 (Tenn Crim. App., at Jackson, Sept. 30, 2010) *no perm. app. filed*, for the premise that, even though the decision not to request a lesser-included charge is strategic, it may still be ineffective representation. At the time of the defendant's trial in *Montea Wilson* the law placed a mandatory duty on trial courts to instruct the jury on lesser included offenses. The defendant was charged with felony murder and his trial attorney did not request that the trial court instruct the jury on the lesser-included offense of second degree murder. As to this issue, this Court stated as follows:

> Trial counsel, though not obligated to request the instruction, was deficient in failing to request an instruction on second degree murder and in failing to preserve the issue for appeal.
>
> . . . .
>
> The transcript from the post-conviction hearing shows that trial counsel may have made strategic decision not to ask for the instruction; however, this does not relieve counsel's obligation to preserve the issue in a motion for new trial for appellate review.

*Montea Wilson*, 2010 WL 3822934, at * 14-15. Unlike in the *Montea Wilson* case, the post-conviction hearing does not show that Counsel "may have made a strategic decision" but rather Counsel stated he made a strategic decision not to request the instruction because it undercut the defense's theory and evidence presented that the Petitioner did not murder the victim. Further, in this case, Counsel did preserve the issue for appeal. *See Robert Page*, 2004 WL 3352994, at *16.

The Petitioner also recognizes *Carl Anthony Watson v. State*, No. W2005-02324-CCA-R3-PC, 2007 WL 1215057 (Tenn. Crim. App., at Jackson, Apr. 20, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007), wherein this Court approved of a trial counsel's strategic decision to not request a jury instruction on a lesser-included offense because it was inconsistent with the defense theory at trial. Specifically, the Court noted that it, "would be illogical to conclude that [c]ounsel was deficient because he did not demand that something occur which, in his strategic opinion, would be detrimental to the defense of his client." *Id.* at *5. The Petitioner attempts to distinguish *Carl Anthony Watson* from his case on the basis that Counsel's defense theory was not "all or nothing." Counsel agreed that the Petitioner hit the victim in this case, whereas in *Carl Anthony Watson* the defendant claimed he never touched the victim. This distinction is not significant as it relates to this issue. In the present case, the Petitioner admitted he hit the victim one time in self-defense. Although admitting he hit the victim one time, the defense theory that he was acting in self-defense would be undercut by a jury instruction on facilitation of second degree murder.

8

Accordingly, the evidence in the record does not preponderate against the trial court's finding that Counsel was not deficient in this respect. Thus, the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE